1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHERYL DEAVER, individually and on behalf of all others similarly situated and on behalf of the general public,

Plaintiffs,

v.

BBVA COMPASS CONSULTING AND BENEFITS, INC.; et al.,

Defendants.

Case No.:  13-cv-222 JSC

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND (Dkt. No. 20)**

Plaintiff filed this putative state law wage and hour class action in Alameda County Superior Court.  Defendants BBVA Compass Insurance Agency, Inc. ("BBVA Compass") and Compass Bank (collectively "Defendants") subsequently removed the case to federal court under the Class Action Fairness Act ("CAFA") of 2005.  *See* 28 U.S.C. §§ 1332(d), 1441, 1453.  Before the Court are three competing motions: Defendants' motions to transfer (Dkt. No. 12) and to dismiss (Dkt. No. 13), and Plaintiff's motion to remand ("Motion to Remand") (Dkt. No. 20).  For the reasons set forth below, the Court GRANTS Plaintiff's

1    motion to remand.  Because the Court lacks jurisdiction, Defendants' motions to dismiss or

2    transfer are moot.

3                              **FACTUAL & PROCEDURAL HISTORY**

4    **I.     The Prior Action**

5           Plaintiff initially filed suit in Riverside County's Superior Court (the "Prior Action").

6    Pursuant to CAFA, Defendants removed the Prior Action to the Central District.  *Deaver v.*

7    *BBVA Compass Consulting and Benefits, Inc., et al.*, Case No. EDCV11-1489 PSG.

8    Plaintiff did not move to remand and the case remained in federal court.  Although the

9    parties stipulated and agreed to waive the deadlines for filing a class certification motion set

10   forth in Local Rule 23-3[1] on two occasions, the district court denied both stipulations.  With

11   mediation negotiations pending, Defendants submitted an *ex parte* application for an order

12   clarifying whether the court considered the case a putative class action.  The court checked

13   the box on Defendants' proposed order indicating that "[t]his case is not a class action" and

14   filed the order.  (Dkt. No. 3-4, Ex. T at 7.)  Shortly thereafter, the parties stipulated to

15   dismissal of the Prior Action without prejudice pursuant to Federal Rule of Civil Procedure

16   41(a)(1)(A)(ii).  The stipulation did not contain any conditions or limitations on Plaintiff's

17   ability to file the same, or a similar, action in the future.

18   **II.    The Present Action**

19          Approximately four months after the voluntary dismissal of the Prior Action, Plaintiff

20   filed her present putative class action complaint ("the Complaint") in Alameda Superior

21   Court asserting five causes of action.  Specifically, Plaintiff alleges (1) failure to pay wages

22   for time worked; (2) failure to provide meal periods or compensation in lieu thereof; (3)

23   failure to timely pay wages due at termination; (4) knowing and intentional failure to comply

24   with itemized employee wage statement provisions; and (5) violation of the Unfair

25

26   _____

27   [1] Central District Local Rule 23-3 demands that, outside of circumstances not applicable
     here, "[w]ithin 90 days after service of a pleading purporting to commence a class
28   action…the proponent of the class shall file a motion for certification that the action is
     maintainable as a class action, unless otherwise ordered by the Court."

1    Competition Law ("UCL") (codified at California Business & Professions Code § 17200 *et*

2    *seq.*).

3        Although the Prior Action involved the same named Plaintiff and Defendants, there

4    are important differences between that action and the present Complaint.  First, the Prior

5    Action alleged two additional causes of action not present here: "failure to provide rest

6    periods or compensation in lieu thereof" and a claim under the Private Attorneys General

7    Act, California Labor Code § 2698, *et seq*.  In addition, having amended her initial complaint

8    twice, Plaintiff's second amended complaint in the Prior Action provides a level of factual

9    detail that is absent from the present Complaint.  Finally, the Prior Action did not make any

10   allegations as to the amount in controversy.  In the present Complaint, in contrast, Plaintiff

11   specifically alleges that jurisdiction is proper only in state court

> because neither Plaintiff's nor any other Class Member's individual amounts in controversy exceed the $75,000 threshold for federal diversity jurisdiction; because the aggregate amount in controversy for all Class Members is below the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act; and because there are no federal questions at issue.

(Complaint ¶ 10.)

### III.   Removal and the Motion to Remand

Defendants timely removed the present action, claiming that this Court has original

jurisdiction under CAFA.  In their removal papers, Defendants performed calculations for

each of Plaintiff's causes of action on a class-wide basis and determined that the total

amount in controversy was $5,772,662.  However, as Plaintiff demonstrated in her motion to

remand and as Defendants concede, Defendants' original calculations contained errors that

inflated the final amount above the $5,000,000 threshold.  Defendants corrected those errors

in their subsequent calculations in their opposition to the motion to remand ("Opposition")[2]

_____

[2] "[F]or purposes of this review it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits." *Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969) (citing 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *see also Cohn v. Petsmart, Inc.*, 281 F. 3d 837, 840 n.1 (9th Cir. 2002) (determining that where defendant had not provided any underlying facts to support its assertion that the

1    but in so doing, they also changed their approach to those calculations.  Initially, Defendants

2    based their calculations on the allegations of the Complaint.  Upon realizing the errors in

3    their calculations, however (and recognizing that merely correcting the math would result in

4    an amount in controversy below $5,000,000), Defendants base their amount in controversy

5    calculations on the more detailed allegations from the Prior Action.  The Court must now

6    decide whether it can exercise jurisdiction of this action pursuant to CAFA.

7                                   **LEGAL STANDARD**

8            "CAFA vests a district court with original jurisdiction over 'a class action' where: (1)

9    there are one-hundred or more putative class members; (2) at least one class member is a

10   citizen of a state different from the state of any defendant; and (3) the aggregated amount in

11   controversy exceeds $5 million, exclusive of costs and interest."  *Washington v. Chimei*

12   *Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) (quoting 28 U.S.C. § 1332(d)(2), 5(B),

13   (6)).  A civil action filed in state court may be removed if it could have properly been filed in

14   federal court originally.  28 U.S.C. § 1441. The removal statutes are construed restrictively,

15   however, and the district court must remand the case if it appears before final judgment that

16   the court lacks subject matter jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S.

17   100, 108–09 (1941); 28 U.S.C. § 1447(c).  There is a "strong presumption" against removal

18   jurisdiction, *Gaus v. Miles. Inc.*, 980 F. 2d 564, 566 (9th Cir. 1992), and doubts as to

19   removability are resolved in favor of remanding the case to state court.  *Matheson v.*

20   *Progressive Specialty Ins. Co.*, 319 F. 3d 1089, 1090 (9th Cir. 2003);  *see also Washington*,

21   659 F.3d at 847 ("the general principles of removal jurisdiction apply in CAFA cases").

22           The burden of establishing federal jurisdiction is on the party seeking removal.

23   *Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004).  This burden "remains,

24   [under CAFA], on the proponent of federal jurisdiction."  *Abrego Abrego v. The Dow*

25   *Chemical Co.*, 443 F. 3d 676, 685 (9th Cir. 2006).  Thus, here, Defendants bear the burden of

26   establishing that this Court has jurisdiction over Plaintiff's claims.

27   _____

28   jurisdictional amount was met in its notice of removal, but did so in opposition to plaintiff's
     motion to remand, "the district court did not err in construing [defendant's] opposition as an
     amendment to its notice of removal").

In calculating the amount in controversy, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E. D. Cal. 2008). The court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C. D. Cal. 2002). Attorneys' fees are properly included in the calculation. *Lowdermilk v. U.S. Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007).

## DISCUSSION

Plaintiff's motion for remand is based solely upon her assertion that Defendants have not established that this case meets CAFA's amount in controversy requirement. The Court agrees.

**A.     Jurisdiction Cannot be Based on the Allegations of the Prior Action**

As explained above, although Defendants' Notice of Removal relied on the allegations of the Complaint to calculate the amount in controversy, in its revised calculations in opposition to Plaintiff's motion to remand Defendants rely, in part, on allegations made in the Prior Action and, more specifically, in the second amended complaint. *See, e.g.,* Dkt. No. 22 at 5 ("the amount in controversy for the claims in the present action, *based on the calculations warranted by the more specific factual allegations contained in the Second Amended Complaint in the Prior Action*") (emphasis added); *id.* at 20 (calculating amount in controversy for off-the-clock claims based on allegations in the Prior Action); *id.* at 21 ("the allegations in the SAC regarding the meal period claim clearly warrant applying a daily violation rate for each putative class member when assessing the amount in controversy for that claim"). As a preliminary matter, then, the Court must decide whether it can rely on Plaintiff's allegations in the Prior Action in deciding that the amount of controversy is satisfied in this action. The Court concludes it cannot. The parties stipulated to dismissal of the Prior Action without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii). "Such a dismissal leaves the situation as if the action never had been

filed.  This means that any future lawsuit based on the same claim [is] an entirely new lawsuit unrelated to the earlier (dismissed) action."  *City of South Pasadena v. Mineta*, 284 F. 3d 1154, 1157 (9th Cir. 2002) (internal citation omitted).  The Ninth Circuit has "adhered slavishly to this interpretation of Rule 41(a)."  *Id.*  It is thus unsurprising that Defendants have not cited, and the Court has not located, any case in which a finding of jurisdiction was based on allegations made in a complaint previously dismissed without prejudice.

Defendants' motion also baldly asserts that Plaintiff has somehow affirmed the allegations set forth in the Prior Action.  Again, no support is cited for this proposition.  Nowhere in her motion to remand or reply memorandum does Plaintiff assert that the allegations in this action are identical to those in the Prior Action.  To the contrary, Plaintiff states that she "does not know."  (Dkt. No. 26 at 15 n.3.)  As Plaintiff has not incorporated the allegations from the Prior Action into her present Complaint, nor otherwise bound herself to them, it would be error for the Court to ground a finding of jurisdiction of this action on a different complaint which, according to the Ninth Circuit, must be treated as if it was never filed.

Since the Court has concluded that it cannot rely on the Prior Action to find jurisdiction of this action, and Defendants rely on the Prior Action for their amount in controversy showing, it follows that Defendants have not met their burden of proving that the amount in controversy is satisfied.  For this reason alone the motion to remand must be granted.  At oral argument, however, Defendants asserted that notwithstanding the errors in their Notice of Removal, the amount in controversy is satisfied based on the allegations in the Complaint independent of the Prior Action.  The Court will therefore examine Defendants' showing in light of that new argument.

**B.    Defendants Must Prove Jurisdiction to a Legal Certainty**

The Court must first decide the appropriate standard of proof.  The Ninth Circuit has identified three scenarios under CAFA, each giving rise to a different standard of proof for removal.  *See Lowdermilk*, 479 F.3d at 998.  First, "[w]here the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of

the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006).  Second, "[i]f the complaint filed in state court alleges damages in excess of the required federal jurisdictional amount, remand is warranted only if it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional minimum." *Id*. at n.8.  Finally, "where the plaintiff has pled an amount in controversy less than $5,000,000, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met." *Lowdermilk*, 479 F. 3d at 1000.

Here, the parties debate whether the Complaint falls under the first or third scenarios. Defendants argue that the preponderance of the evidence standard applies because (1) Plaintiff has not adequately pled that the amount in controversy is below $5,000,000, and/or (2) "the circumstances indicate that the allegations regarding the amount in controversy in the complaint were made in bad faith."  (Dkt. No. 1-1 at 13:23-25.)

### 1.    Plaintiff's Amount in Controversy Allegation is not Ambiguous

Defendants first contend that it must prove the amount in controversy by a preponderance of the evidence because Plaintiff's Complaint does not allege that the total amount in controversy is less than $5 million.  *See Guglielmino v. McKee Foods Corp.,* 506 F. 3d 696, 701 (9th Cir. 2007).  The Court disagrees.  Plaintiff specifically alleges that "the aggregate amount in controversy for all Class Members is below the $5,000,000 threshold for federal jurisdiction under the Class Action Fairness Act."  This allegation could not be more clear: Plaintiff is seeking less than $5 million on behalf of the class.  Attorneys' fees are included in this demand because the "amount in controversy" under CAFA includes fees. *Lowdermilk,*479 F.3d at 1000.  In *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 *2 (N.D. Cal. March 1, 2012), in contrast, the plaintiff only alleged that damages, restitution and penalties did not exceed $5 million; the plaintiff did not allege, as Plaintiff here, that the "amount in controversy" did not exceed $5 million.  *See Trahan v. U.S. Bank Nat. Assoc.*, No.  09-03111, 2009 WL 4510140, at *3 (N. D. Cal. Nov. 30, 2009) *aff'd.* 379 F. App'x 628 (9th Cir. 2010) (collecting district court opinions issued after *Guglielmino* and finding "courts have concluded that where a plaintiff expressly states that the 'claim' or the 'amount

1    in controversy' is less than the jurisdictional threshold, the complaint is sufficiently certain

2    and the legal certainty standard applies").

3        Defendants' theory that Plaintiff's qualification of the amount in controversy as being

4    "for all Class Members" means that Plaintiff has excluded attorneys' fees is unpersuasive.

5    The Complaint seeks attorneys' fees on behalf of Plaintiff and the class; Plaintiff's attorneys

6    do not seek attorneys' fees. *See, e.g.,* Complaint ¶ 34 ("Plaintiff and the class she seeks to

7    represent . . . are entitled to . . . attorneys' fees); ¶ 54 (Plaintiff and the Former Employee

8    Subclass Members are entitled to . . . attorneys' fees"). The causes of action at issue also

9    provide an employee with the right to recover attorneys' fees. *See, e.g.,* Cal. Labor Code

10   §1194(a). It thus makes sense that Plaintiff would allege that the amount in controversy "for

11   all Class Members" is less than the jurisdictional minimum.

12       Defendants' additional argument that the legal certainty standard is inapplicable

13   absent an additional jurisdictional limiting allegation in the prayer for relief is not supported

14   by the case law. In *Mejia v. Prologix Distribution Services (W.), LLC* , cited by Defendants,

15   the court applied the legal certainty standard where the complaint alleged that the "aggregate

16   amount in controversy (including attorneys' fees) is less than five million dollars

17   ($5,000,000.00)," even though that allegations was not repeated in the prayer for relief.

18   No.12-cv-4840, 2012 WL 5522309, at *3 (N. D. Cal. Nov. 14, 2012); *see also Naranjo v.*

19   *Gen. Nutrition Corp.*, No. 12-01680 , 2012 WL 2119260, at *3 (N. D. Cal. June 11, 2012)

20   ("the court agrees…that *Guglielmino* does not stand for the proposition that an effective

21   disclaimer must appear in the prayer for relief…[r]ather, it merely requires the complaint to

22   be unambiguous as to the value of relief sought before the 'legal certainty' standard will be

23   applied.") (internal citations and quotation marks omitted).

24       The other two cases cited by Defendants—*Trahan*, 2009 WL 4510140 and *Ray v.*

25   *Wells Fargo Bank, N.A.*, No. 11-01477 , 2011 WL 1790123 (C. D. Cal. May 9, 2011)—

26   applied the preponderance of the evidence standard because the plaintiffs had only alleged

27   *damages* below $5 million and thus had left ambiguous whether attorneys' fees were

28   included. Although the *Trahan* court also noted that the plaintiff had not repeated his

United States District Court
Northern District of California

8

"aggregate damages are less than $5,000,000" disclaimer in his prayer for relief, its decision relied on *Guglielmino*'s rationale that attorneys' fees "do not fall comfortably within the realm of 'damages'" and thus a complaint lacking additional specificity was ambiguous for that reason. *Trahan*, 2009 WL 4510140 at *3 (citing *Guglielmino*, 506 F.3d at 700–01). Plaintiff, here, in contrast, has unambiguously alleged that the amount in controversy for CAFA purposes does not exceed $5 million.

### 2.    There is no Bad Faith

Defendants next argue that the preponderance of evidence standard applies because Plaintiff's jurisdictional allegation is made in bad faith. Defendants contend that Plaintiff's bad faith is "evident from her impermissible forum shopping," from her knowledge of and allegations in the prior action, and from her "false statements in the motion for remand." (Dkt. No. 22 at 15-18.)

In *Lowdermilk*, the Ninth Circuit held that "subject to a 'good faith' requirement in pleading, a plaintiff may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court." 479 F.3d at 999. *Lowerdermilk* thus defeats Defendants' argument that forum shopping—manipulating the allegations of the complaint for the express purpose of conquering federal jurisdiction—qualifies as bad faith. *See also The Standard Fire Ins. Co. v. Knowles*, __U.S.__, 133 S.Ct. 1345 (2013) ("federal courts permit individual plaintiffs, who are the masters of their complaints, to avoid removal to federal court, and to obtain a remand to state court, by stipulating to amounts at issue that fall below the federal jurisdictional requirement."). Defendants' reliance on *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-3711, 2003 WL 22387598 (N.D. Cal. Oct. 14, 2003) is misplaced. *Wireless* involved a motion to transfer pursuant to 28 U.S.C. section 1404; it did not purport to address the burden of proof in a removed CAFA case. Moreover, the issue was filing in one federal district versus another. The question on Plaintiff's motion to remand is whether the case can stay in federal court, not which federal court is appropriate if there is jurisdiction.

In the CAFA context "bad faith" jurisdictional allegations are those that plead damages below the jurisdictional amount despite the plaintiff's knowledge that the claims as pled are actually worth more. *See Lowdermilk*, 479 F. 3d at 1002-03 (quoting *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1410 (5th Cir. 1995)). As courts have noted, however, "in order to prove bad faith, the defendant must prove that the plaintiff is actually seeking more than $5 million, which essentially collapses the bad faith and amount in controversy inquiries." *Bolton v. US Nursing Corp.*, No. 12-4466, 2012 WL 5269738, at *4 (N.D. Cal. Oct. 23, 2012); *see also Bonnel v. Best Buy Stores, L.P.*, 881 F.Supp.2d 1164, 1169 (N.D. Cal. 2012) (same). Indeed, in *Lowdermilk*, the Ninth Circuit noted that good faith in the CAFA context "is entwined with the legal certainty test, so that a defendant will be able to remove the case to federal court by showing to a legal certainty that the amount in controversy exceeds the statutory minimum." 479 F.3d at 999. Thus, it is unclear how Defendants' bad faith assertion results in the actual application of a preponderance of the evidence burden of proof.

In any event, Defendants insist that Plaintiff's more specific allegations in the Prior Action's second amended complaint, as well as Defendants' removal notice in the Prior Action, demonstrate that Plaintiff "knows" that the value of her class claims exceed $5 million and, therefore, her allegations to the contrary in this action are made in bad faith. Defendants' argument relies on allegations made in the Prior Action, but, as explained above, because the Prior Action was voluntarily dismissed without prejudice under Rule 41(a)(1)(ii) it must be treated as if it "never had been filed." *City of South Pasadena*, 284 F. 3d at 1157 (internal quotation mark and citation omitted).

Even if the Court could consider the Prior Action for the purpose of the bad faith analysis, however, no bad faith has been demonstrated here. First, in the Prior Action Plaintiff never asserted that the amount in controversy was satisfied; instead, Defendants removed the lawsuit on that ground. Plaintiff's decision not to move to remand is not an affirmative representation that the $5 million threshold was satisfied. Moreover, the Prior Action alleged more claims than are alleged in this lawsuit. *See Bonnel*, 881 F.Supp. 2d at 1169-70 (holding that a class action plaintiff has the right to file a narrower case than the

10

plaintiff previously filed).  That the Complaint's allegations are less specific than the voluntarily dismissed second amended complaint in the Prior Action also does not evidence bad faith.  *See id.* at 1169 ("In as much as Defendant asserts that Plaintiff excludes certain allegations to avoid federal jurisdiction, such a pleading is not itself bad faith").  Plaintiff's decision to plead with less specificity than her second amended complaint in the Prior Action is entirely consistent with *Lowdermilk's* holding that a class action plaintiff "may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in state court."  479 F.3d at 999.  Defendants have not demonstrated any bad faith warranting abandonment of the legal certainty test.  *See Bolton*, 2012 WL 5269738 at *5 (finding no bad faith in CAFA case where allegations of removed complaint did not contradict the less than $5 million amount in controversy jurisdictional allegation).

### 3.    *Standard Fire Insurance Co. v. Knowles*

Finally, Defendants argue that the Supreme Court's recent decision in *Standard Fire Insurance Company v. Knowles*, 133 S. Ct. 1345 (2013), renders *Lowdermilk* "no longer valid." (Dkt. No. 27 at 3:12.)  This Court is required to follow *Lowerdermilk* unless *Standard Fire* undercuts the theory or reasoning of *Lowerdermilk* "in such a way that the cases are clearly irreconcilable."  *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003).  They are not.

*Standard Fire* asked whether a class-action plaintiff may stipulate "prior to certification of the class, that he, and the class he seeks to represent, will not seek damages that exceed $5 million in total" in order to "remove the case from CAFA's scope."  *Id*. at 1347.  The Court held that because such a stipulation does not bind the as-yet absent class members, it does not operate to avoid federal jurisdiction under CAFA.  *Id.* at 1349 ("Because his precertification stipulation does not bind anyone but himself, [Plaintiff] has not reduced the value of the putative class members' claims.").

Defendants contend that this reasoning contradicts *Lowdermilk's* confirmation that a putative class representative is "master of her complaint" and, hence, "may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction and remain in

state court." *Lowdermilk*, 479 F. 3d at 999.  But *Standard Fire* concerned the situation where the amount in controversy would "exceed[] $5 million *but for* the stipulation of the putative class representative."  *Standard Fire*, 133 S.Ct. at 1348 (emphasis in original).  On the basis of the defendant's evidence "the District Court found that the 'sum or value' of the 'amount in controversy' would, in the absence of the stipulation, have fallen just above the $5 million threshold."  *Id. Lowdermilk*, in contrast, did not involve a stipulation; rather, it decided the burden of proof to be applied to a trial court's determination in the first instance of whether the claims pled exceed the $5 million threshold.  Moreover, the unanimous *Standard Fire* decision was not in any way premised on a plaintiff not being the master of her complaint, but instead on the "simple reason" that in a putative class action the named plaintiff's stipulation is not binding on the class.  133 S.Ct. at 1348.  Thus, *Standard Fire* does not forbid a plaintiff from intentionally limiting the claims brought in order to avoid federal jurisdiction.  As it is not irreconcilable with *Lowdermilk*, this Court, and thus the parties, are bound by *Lowdermilk.  See Bell v. Home Depot U.S.A., Inc.*, No. 12-2499, 2013 WL 1791920 at *4 n.1 (E.D. Cal. April 26, 2013) (holding that *Standard Fire v. Knowles* is not material to whether the legal certainty test applies and has been satisfied).

Because Defendants have not established that the Complaint was ambiguous as to the amount in controversy or that Plaintiff has acted in bad faith with respect to her pleading of the amount in controversy, the Court must apply the legal certainty test here.

**C.      The Amount in Controversy Requirement is not Satisfied**

"The 'legal certainty' standard sets a high bar for the party seeking removal, but it is not insurmountable." *Lowdermilk*, 479 F.3d at 1000.  However, "speculation does meet the 'legal certainty' standard" and a court "cannot base [its] jurisdiction on Defendant's speculation and conjecture."  *Id.* at 1002.  *Lowdermilk*, for example, found that the legal certainty standard had not been achieved because "absent more concrete evidence, it is nearly impossible to estimate with any certainty the actual amount in controversy."  479 F.3d at 1001.  Also, as with any amount in controversy calculation, the Court considers the facts alleged in the complaint as well as "summary judgment type evidence relevant to the amount

in controversy at the time of removal." *Valdez v. Allstate Ins. Co.*, 372 F. 3d 1115, 1117 (9th Cir. 2004).  Finally, while legal certainty demands a strong showing by the removing party, "the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Comm., Inc.*, 627 F. 3d 395, 400 (9th Cir. 2010).

"[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the…proposed class and determin[ing] whether the resulting sum exceeds $5 million."  *Standard Fire Ins. Co.*, 133 S.Ct. at 1348.  Therefore, to the extent the Court can "estimate with certainty the actual amount in controversy" it will attempt to do so.  *Lowdermilk*, 479 F.3d at 1001.

### 1.    Putative Class Size

In performing their amount in controversy calculation, Defendants rely on "data includ[ing], among other things, the respective dates of hire, dates of termination (if applicable), and most recent hourly rate of pay" for the putative class as established by the Defendants.  (Dkt. No. 4 ¶ 4.)  From this information Defendants extrapolate an average hourly rate of pay across the putative class members ($14.87), the aggregate weeks worked by the putative class (61,086), and the aggregate number of pay periods for the putative class (10,427).  (Dkt. No. 22-2 at 13.)  However, the underlying assumption, that is, the composition and size of the putative class (622 persons), is not established to a legal certainty in the first instance.

Plaintiff's Complaint defines the putative class as "[a]ll persons who, for the four years prior to the filing of this class action to the present, are or have been employed by Defendants in the State of California [as] 'financial sales advisors,' 'tellers' or 'teller supervisors' and classified as non-exempt employees."  (Complaint ¶ 21.)   Defendants contend that "two of the three job titles are not actually job titles used by Defendants" and that "if Defendants had narrowed the putative class as Plaintiff suggests, only five people would be members of the putative class, and Plaintiff herself would not be one of them." (Dkt. No. 22 at 17:26, 18:18-20 (emphasis omitted).)  This defect in Plaintiff's class

United States District Court
Northern District of California

United States District Court
Northern District of California

1  allegations may mean that the action as currently pled does not warrant class action

2  treatment.  Assuming, however, that the Court can consider positions not specifically

3  identified in Plaintiff's class definition, Defendants have not established to a legal certainty

4  that the positions they identify are properly included in the class.

5      All told, Defendants include 13 job titles even though Plaintiff names only three.

6  Rather than explain the job duties of these positions, Defendants attest that they consider the

7  positions they have identified to be equivalent or variants of the positions named in the

8  Complaint.  (Dkt. Nos. 22-3 ¶ 3.)  But these conclusory assertions are unhelpful and do not

9  meet the legal certainty test.  As Plaintiff notes, without some evidence as to the duties of

10 these positions, it is impossible to discern if some of them, for example, "senior financial

11 sales advisor," are positions too senior to be included within the intended class.  *See*

12 *Lowdermilk*, 479 F. 3d at 1002 ("If Defendant, who is the only party with access to its

13 employment records cannot more accurately approximate the class size, Plaintiff cannot be

14 expected to plead her case with any more specificity than she did"); *Bonnel*, 881 F. Supp. 2d

15 at 1171 ("[Defendant] proffered no other evidence with the exception of a single conclusory

16 affidavit, even though it could have given its access to and possession of employment

17 records.").

18     On this record, the Court cannot determine to a legal certainty whether the additional

19 positions included by Defendants are in fact equivalent to those named by Plaintiff.  Thus,

20 the Court cannot accept the number of putative class members put forth by Defendants; to do

21 so would be to ground its jurisdiction on speculation and conjecture.  *Cf. Lowdermilk*, 479 F.

22 3d at 1002.  Thus, because Defendants rely on this unfounded class size to determine the

23 number of aggregate work weeks and average hourly rate of pay, two figures essential to

24 every other calculation, the Court cannot make any amount in controversy calculations to a

25 legal certainty.  (*See* Dkt. No. 4 ¶¶ 8-10.)  To demonstrate the importance of this one factor,

26 if the Court reduces the total number of workweeks to represent a class size of 100

27 individuals, rather than 662, the amount in controversy for the first claim alone drops by

28

14

more than $1,000,000.[3]  Nonetheless, as demonstrated below, even assuming a 662 person class, the amount in controversy requirement is not satisfied.

### 2.  The Value of Plaintiff's Claims

#### a.  1st Claim: Failure to Pay Wages for Hours Worked

Plaintiff's first cause of action alleges that "by their policies of: (a) Failing to pay employees for all hours worked, whether regular time or overtime; and/or (b) Requiring employees to work 'off the clock' and without compensation Defendants willfully violated the provisions of the [California] Labor Code, including section 1194, the applicable IWC Wage Orders, and California law."  (Dkt. No. 1-1 at 39 ¶ 33.)

Defendants' Notice of Removal calculated this claim as potentially valued at $1,199,226, before attorneys' fees are considered.  Defendants' calculation assumed a 662 person class, 66% of whom worked full-time and 33% part-time, as well as a violation rate of one-hour per week for each of the aggregated workweeks in the putative class. They then applied a regular hourly pay-rate for the one-hour of "off the clock" time for the part-time employees and an overtime pay-rate (i.e. 1.5x) to the remaining class members identified as full-time employees to calculate the amount of the claim.  In their Opposition, Defendants adjust the full and part-time percentages to 70% and 30% respectively and include an additional $643,729.  The additional amount is based on the detailed allegations in the Prior Action regarding class members being required to open and close the branches without compensation.  Defendants have not established the value of this claim to a legal certainty.

First, Defendants have not sufficiently justified their assumption that it is appropriate to apply an over-time rate of pay to every full-time employee.  Defendants defend based upon the testimony of Defendants' Human Resources–HR Partner, Sheila Anyiwo.  (Dkt. No. 22 at 23-24.)  Ms. Anyiwo states "that full-time employees are expected to work, on

---

[3] Because Defendants rely on the aggregate number of workweeks in their calculations, rather than the actual class size, the Court can only estimate what effect a reduction in class size would have on the amount in controversy calculations.  For example, because Defendants' claimed class size of 662 individuals is 6.6 times the size of the CAFA minimum, the Court divides the number of aggregate workweeks provided by Defendants by 6.6 to approximate the number of workweeks in a 100-person class.

United States District Court
Northern District of California

average, 40 hours a week,….are scheduled to work in accordance with this expectation and regularly do work at least 40 hours per week in accordance with this expectation." (Dkt. No. 22-3 ¶ 2.)  Although the Court accepts Ms. Anyiwo's assertion as true with respect to what hours Defendants *expect* the putative class members to work, her statements do not constitute proof to a legal certainty, especially considering that the employment records which would support her contentions are in Defendants' possession.  *See Bonnel,* 881 F. Supp. 2d at 1171. If, in fact, every full-time employee clocks in at 40 hours per week Ms. Anyiwo could so testify based on a review of Defendants' records. While her statements may support an assumption that *some* of the unpaid work alleged in Plaintiff's first claim may be clocked at an over-time rate, they do not support Defendants' assertion that *all* unpaid wages for full-time employees must be so valued.

Second, Defendants have assumed violation rates unalleged in the Complaint and unsupported by the evidence.  Defendants assume that *every* putative class member worked one hour without pay every week, although the Complaint merely alleges that Defendants had a consistent policy of failing to pay for all hours worked. To support this assumption, Defendants cite *Jasso v. Money Market Express, Inc.*, No, 11-5500, 2012 WL 699465, at *5-6 (N. D. Cal. Mar. 1, 2012) for the proposition that "where a plaintiff alleges a consistent policy or practice of failure to pay all wages due, it is reasonable, for purposes of determining the amount in controversy to a legal certainty, to assume that at least one violation occurred per putative class member per week."  (Dkt. No. 4 ¶ 12.)  The *Jasso* court, however, later limited its holding to the specific allegations there; namely, where the plaintiff alleged a "uniform policy and scheme" and that the violations took place "at all material times."  *Morris v. LiquidAgents Health Care, LLC,*  No. 12–4220, 2012 WL 5451163 at *5 (N. D. Cal. Nov. 7, 2012) (distinguishing *Jasso*).  Indeed, the *Morris* court held that "without evidence from its own records or any allegation as to the frequency of alleged violations to support its estimates, Defendant cannot assume any particular frequency as a basis for its jurisdictional calculations."  *Id.* at *4; *see also Vigil v. HMS Host USA, Inc,*.  No. 12–02982, 2012 WL 3283400, at *5 (N. D. Cal. Aug. 10, 2012) (holding that it was improper to assume

one hour of overtime per week because of a lack evidentiary support).  Defendants similarly here cannot assume one hour of "off the clock" work per week for each class member based simply on an allegation of a "consistent" policy of failing to pay for "off the clock" work.

In their Opposition, Defendants go farther and add an additional $643,729 for one full-time employee at each branch performing opening and closing duties for 30 minutes a day.  There is nothing in the Complaint to support this calculation; instead, Defendants rely entirely on allegations in the Prior Action, allegations which may never be repeated in this action.  As this reliance is improper, *see supra* at Section A, the additional $643,729 cannot be considered in the jurisdictional analysis.

Third, Defendants' determination of the total number of workweeks, and thus the total number of pay periods, is based on faulty assumptions. Defendants describe their method as relying on "the start dates and termination dates of each of the putative class members [to] calculate[] the number of workweeks worked by each putative class member."  (Dkt. No. 4 ¶ 8.)  Although Plaintiff does not challenge this approach, it improperly assumes that every single putative class member worked every single work day within the relevant time period; that is, that they never took any vacation or sick or family leave.  This result seems unlikely and, in any event, is insufficient to satisfy the legal certainty standard.  Given that Defendants are in possession of the relevant payroll records, it would have been possible to provide a more accurate estimated accounting.  *See Bonnel*, 881 F. Supp. 2d at 1171 ("[Defendant] proffered no other evidence with the exception of a single conclusory affidavit, even though it could have given its access to and possession of employment records.")

Despite these problems with Defendants' calculation, the Court will accept Defendants' assumptions—including the one hour of "off the clock" time per class member, except for the assumptions based upon the allegations of the Prior Action (and thus the additional $643,729 for opening and closing each branch). The Court therefore values the first claim for relief as **$1,533,105.89**.  To determine the proportion of workweeks worked by full-time employees, the aggregated total workweeks (61,086) is multiplied by 70% to arrive

United States District Court
Northern District of California

United States District Court
Northern District of California

at 42,760.2 weeks. This amount is multiplied by the presumed violation rate of one-hour per week, and then by the overtime rate of pay set forth by Defendants, i.e. $22.31. This calculation leads to a claim of $953,980.06[4] for full-time class members. The remainder of the aggregate workweeks, 18,325.8, represents the weeks worked by part-time employees (also achievable by multiplying the aggregate workweeks by 30%). Following the same formula, this number is multiplied by the presumed violation-rate of one-hour per week and then by the regular rate of pay, i.e. $14.87. This calculation leads to a claim of $272,504.65[5] for part-time employees. Adding these figures, and including an additional 25% for attorneys' fees, the Plaintiff's first claim places a total of **$1,533,105.89** into controversy.

### b. *2nd Claim: Failure to Provide Meal Periods*

Plaintiff's second cause of action alleges that "Defendants had a policy and practice of failing to provide lawful duty-free meal periods for days during the liability period on which Class Members work(ed)/work periods in excess of five hours, and Defendants failed to provide compensation in lieu thereof" and that such failure was a "willful[] violat[ion of] the provisions of [California] Labor Code sections 226.7 and 512, section 11 of the IWC Wage Orders, and Cal. Code Regs., Title 8, section 11000 *et seq*." (Dkt. No. 1-1 at 40 ¶¶ 36-37.)

The primary dispute here, as with the "off the clock" claim, is the violation rate, that is, the frequency of missed meal breaks. The Complaint makes no allegations with regard to frequency. Relying on *Jasso*, Defendants' Notice of Removal assumed one missed meal period per week per full-time class member (assuming class members worked every week from date of hire through separation or date of removal of complaint) for a claim valued at $599,613. In their Opposition, Defendants revised their calculation. Relying on specific

---

[4] This amount is based on the Court's calculation of the totals relying on Defendants' formula (Dkt. No. 22-2, ¶ 13(a)); while it is slightly higher than the amount estimated by Defendants ($953,929), this difference is immaterial to the Court's analysis.
[5] This amount is based on the Court's calculation of the totals relying on Defendants' formula (Dkt. No. 22-2, ¶ 13(a)); while it is slightly lower than the amount estimated by Defendants ($272,551), as with the preceding calculation, this difference is immaterial to the Court's analysis.

factual allegations from the Prior Action second amended complaint, Defendants assume every full-time putative class member missed every single meal period.  They contend such assumption is appropriate because in the Prior Action Plaintiff alleged that financial sales advisors and teller supervisors were not allowed to leave the bank premises during meal periods, and tellers were required to review "daily updates" during lunch periods.  As previously explained, however, the Court cannot rely on allegations in a complaint dismissed without prejudice.  *See supra* at Section A.  Whatever the allegations previously made, those allegations are not—and may never be—repeated here.

At oral argument, Defendants urged the Court to apply a frequency rate of two missed meal periods per week on the ground that increasing the missed meal periods from one to two per week satisfies the amount in controversy.  This argument is completely without support.  There is nothing in the Complaint that permits a finding to a legal certainty, or even by a preponderance of the evidence, that Plaintiff is alleging two missed meal periods per week.  Plaintiff may ultimately do so.  And, if she does, the amount in controversy may be satisfied and the case removed at that time.  *See Lowdermilk*, 479 F.3d at 1003 (stating that CAFA gives "defendants the option of a federal forum at the point when they can prove its jurisdiction").  To accept Defendants' argument here, however, would mean that in every missed meal period lawsuit a court can assume two missed meal periods per week based merely on the allegation of a policy of not providing meal periods.  *Lowdermilk* does not permit such an assumption.

Accepting Defendants' assumptions (including one missed meal period per week per full-time class member), but without incorporating allegations from the Prior Action, the Court calculates the value of the meal period claim as $635,844.17.  To determine the proportion of workweeks worked by full-time employees the aggregate total workweeks (61,086) is multiplied by 70% to arrive at 42,760.2 weeks.  This number is multiplied by the proffered violation rate of one missed meal-period per week and then by the average rate of pay, or $14.87 for a total amount of $635,844.17 in controversy.  Defendants are correct to exclude part-time employees from the amount in controversy on this claim given that a

United States District Court
Northern District of California

missed meal claim violation can only arise after a shift of five hours or more.  *See* Cal. Lab.

Code § 512(a).  Because the California Supreme Court has recently determined that

attorneys' fees are not available on a meal period claim under California Labor Code §

226.7, the Court does not include them in its calculation.  *Kirby v. Immoos Fire Prot., Inc.*,

53 Cal. 4th 1244, 1248 (2012).

### c. 3rd Claim: Failure to Timely Pay Wages Due at Termination

Plaintiff's third cause of action alleges that Defendants willfully failed to pay

members of the proposed subclass—those class members who were previously employed by

Defendants but who quit or were terminated within the three-year statute of limitations—all

wages due within 72 hours of their separation.  (Dkt. No. 1-1 at 40 ¶¶ 51-54.)  Under Section

203 of the California Labor Code, such a violation results in a penalty of one full day's

wages for each day that the unpaid wages remain outstanding, with a limit of 30 days.[6]

Defendants' calculation assumes that every putative subclass member is entitled to the

full 30 days penalty, that is, that each member was terminated or quit more than 30 days

before the lawsuit was removed.  *Lowdermilk* held that such an assumption is unwarranted;

instead, a defendant must provide concrete evidence supporting such an assumption,

evidence which Defendant here possesses.  479 F.3d at 1001.  Nonetheless, given the

relatively small size of the class here, it is likely that nearly all of the subclass members were

separated from their employment with Defendants more than 30 days before the lawsuit was

removed.  Thus, for the purposes of argument, the Court will accept Defendants' calculation

---

[6]Plaintiff is fickle in her approach to the Prior Action.  On the one hand, she argues that
Defendants may not rely on calculations from the Prior Action because "[t]his…is a new
case, with a unique complaint."  (Dkt. No. 26 at 15:16-17 (citing *Bonnel*).)  At the same
time, Plaintiff highlights that Defendants' calculation of waiting time penalties here is
"Wildly Inconsistent" with their calculation of similar claims in the Prior Action; suggesting
that the inconsistency is indicative of impropriety.  (Dkt. No. 26 at 17:1-17.)  As described
above, while the Court judicially notices documents filed in the Prior Action, it does not
accept the allegations contained therein for the purpose of establishing the amount in
controversy to a legal certainty.  This analysis applies equally to those allegations which
would aid Plaintiff's arguments as it does to those which would aid Defendants' position.

1   of the value of this claim, including attorneys' fees, as $1.281.645.30[7] even though this

2   amount includes the problematic assumption as to class size.

3          ***d.***       ***4th Claim: Itemized Employee Wage Statement Provisions***

4         Plaintiff's fourth cause of action alleges that by failing to properly maintain records

5   demonstrating "when the employee begins and ends each work period, total hours worked

6   and applicable rates of pay, and meal periods," Defendants violated section 226(a) of the

7   California Labor Code. (Dkt. No. 1-1 at 41 ¶ 57.) Plaintiff contends that "Defendants have

8   knowingly and intentionally failed to comply with Labor Code section 226(a)." (*Id.* at ¶ 56.)

9   Section 226(e) provides that an employee suffering a knowing and intentional violation of

10  this requirement is entitled to the greater of either her actual damages or "fifty dollars ($50)

11  for the initial pay period in which a violation occurs and one hundred dollars ($100) per

12  employee for each violation in a subsequent pay period, not to exceed an aggregate penalty

13  of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable

14  attorney's fees."

15        Defendants calculate the value of this claim as $1,262,000. Defendants identify an

16  aggregate total of 10,427 pay periods within the one-year statute of limitations. This number

17  is multiplied by $100 to determine the total amount of penalties if all penalties were charged

18  at $100. The result is $1,042,700. However, the first penalty is only assessed at $50.

19  Defendants state that they performed a calculation to account for this where they subtracted

20  $50 from the amount assessed as the aggregate $100 penalties per pay period. (Dkt. No. 22-

21  2 ¶ 13(c).) Without any additional information from Defendants on which to base a more

22  specific calculation, the Court assumes this calculation involved multiplying the total number

23  of putative class members, 662, by $50 (as the difference between the $100 penalty and the

24  $50, first-violation, penalty) to arrive at $33,100. Defendants must have then subtracted this

25  amount from the over-stated penalty amount for a total value of $1,009,600 for violations of

26  section 206. Adding an additional 25% for attorneys' fees, the fourth cause of action puts

27  _____

28  [7] This amount is based on the Court's calculation of the totals relying on Defendants' formula (Dkt. No. 22-2, ¶ 13(b)); while it is slightly lower than the amount estimated by Defendants ($1,281,865), this difference is immaterial to the Court's analysis.

United States District Court

Northern District of California

$1,262,000 into controversy.  While Defendants' lack of precision as to how they performed these calculations falls below the legal certainty standard, the Court nevertheless accepts them for purposes of its analysis here.

### e.  Total Value of Plaintiff's Claims

In summary, Plaintiff's individual claims, as pled in her Complaint, put the following maximum amounts in controversy:

- Plaintiff's first claim, including attorneys' fees, puts $1,533,105.89 into controversy;
- Plaintiff's second claim puts $635,844.17 into controversy;
- Plaintiff's third cause of action, including attorneys' fees, puts $1,281,645.30 into controversy; and
- Plaintiff's fourth cause of action, including attorneys' fees, puts $1,262,000.00 into controversy.

When these figures are added together, Plaintiff's Complaint places $4,712,595.36 in controversy.  This calculation ignores some of the problematic assumptions made by Defendants, but does not rely upon the allegations from the Prior Action.

## CONCLUSION

For the reasons explained above, Defendants have not proven that the amount in controversy on the removed Complaint exceeds $5 million.  Accordingly, Plaintiff's motion to remand this action to the Alameda Superior Court is GRANTED.  The case must remain in state court unless and until Plaintiff's allegations and/or Defendants' evidence establishes that the amount in controversy is satisfied.

This Order disposes of Docket No. 20.

**IT IS SO ORDERED.**

Dated: May 16, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE